IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JESSICA E.,[1]                                                    Case No. 3:19-cv-00224-MK

                     Plaintiff,                           **OPINION**
                                              **AND ORDER**

     v.

COMMISSIONER, Social Security
Administration,

                     Defendant.
_____

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Jessica E. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her applications for disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

XVI of the Social Security Act (the "Act"). This Court has jurisdiction to review the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of
non-government parties and their immediate family members.

Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 9. For the following reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Before Plaintiff's present applications, Plaintiff was found disabled for closed period from May 2004 through August 2007. *See* Tr. 996–1009. Plaintiff filed her current DIB application in January 2015 and her SSI application in February 2015. Tr. 734. Plaintiff alleged a disability onset date of September 5, 2014. *Id.* Her claims were denied initially and upon reconsideration on. *Id.* Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and two hearings were held in June and July 2017. Tr. 903–46; 947–95. On November 1, 2017, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 734–46. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. Tr. 1–7. This appeal followed.

## FACTUAL BACKGROUND

Born in 1975, Plaintiff was 39 years old on her alleged disability onset date. Tr. 1040. Plaintiff left school in the 11th grade and later obtained a GED. Tr. 922, 2087. Plaintiff has past work experience as a cashier and as a truck driver. Tr. 922–23, 1282. She alleges disability based on: the effects of her cerebrovascular accident ("CVA")[2]; migraines; vertigo; mental health conditions; and plantar fasciitis. Tr. 737, 1184–1207.

---

[2] In 2004, Plaintiff sustained several small strokes of unknown etiology. Tr. 820.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if

so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act, but found that she engaged in substantial gainful activity during the period between April 2016 and March 2017. Tr. 736. The ALJ additionally found, however, that there was a continuous 12-month period in which Plaintiff did not engage in substantial gainful activity, and the remainder of her decision addressed that period. Tr. 737.

At step two, the ALJ found that Plaintiff had the following severe impairments:  status post CVA; migraines; positional vertigo; and mental health conditions described as neurocognitive disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), and panic disorder. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. *Id.* The ALJ found that Plaintiff had the RFC to perform medium work with the following limitations:

> [S]he can lift, carry, push, and pull 25 pounds occasionally and 20 pounds frequently; can stand and walk six hours total in an eight-hour workday; can sit six hours total in an eight-hour workday; can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolds; can occasionally crouch; should avoid concentrated exposure to hazards; has sufficient concentration, persistence and pace to complete simple routine tasks in two hour increments for a normal workday and workweek with normal breaks; should receive instruction in written format; should have only superficial interactions with the public, coworkers, and supervisors; would work best independently but can work with a small group of coworkers on an occasional basis; should be in a workplace with simple and few changes in routine.

Tr. 739.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 744. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers such that Plaintiff could sustain

employment despite her impairments. Tr. 745. The ALJ thus found Plaintiff was not disabled

within the meaning of the Act. Tr. 746.

**DISCUSSION**

Plaintiff asserts that remand is warranted for five reasons. First, she contends the Appeals

Council was required to consider the post-hearing opinion of Barbra Hills, M.D. Second, she

asserts that the ALJ erred at step one in assessing whether she engaged in substantial gainful

activity. Third, she argues the ALJ failed to provide clear and convincing reasons for rejecting

her subjective symptom testimony. Fourth, she assigns error to the ALJ's weighing of the

medical evidence. Finally, she contends the ALJ crafted a flawed RFC. The Court addresses each

argument in turn.

**I.      Post-Decision Evidence**

Plaintiff argues that the Commissioner erred in disregarding the post-hearing opinion of

Dr. Hills. Pl.'s Opening Br. 13–14, ECF No. 20 ("Pl.'s Br."). Defendant argues that the Appeals

Council did not err because the opinion post-dates the ALJ's decision and does not contain

evidence that Dr. Hills intended her assessment to relate to the period before the ALJ's decision.

Def.'s Br. 4–5, ECF No. 21.

Dr. Hills served as Plaintiff's treating physician since at least 2004. *See* Tr. 2112. In

February 2018, Dr. Hills completed an attorney-supplied, post-hearing opinion worksheet. Tr.

881–88. Regarding Plaintiff's ability to perform activities within a schedule and maintain

acceptable attendance and punctuality, Dr. Hills opined that Plaintiff had an "inability up to 20

percent of a workday or workweek." Tr. 886. Upon receiving the post-hearing opinion, the

Appeals Council concluded that it did not relate to the period at issue and therefore did not affect

Plaintiff's disability determination. Tr. 2.

The Court finds that the Commissioner did not err. The Appeals Council is not required to review additional evidence that does not relate to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. §§ 404.970(c), 416.1470(c). Appeals Council review is limited to narrow circumstances explicitly defined by regulation such as the receipt of additional evidence that has a reasonably probability to change the outcome of the decision. *Id.* §§ 404.970(a)(5), 416.1470(a)(5). Such evidence, however, must be new, material, and must "*relate[] to the period on or before the date of the hearing decision*." *Id.* (emphasis added). Where a claimant sends additional evidence that does not relate to the period on or before the date of the decision, "the Appeals Council will send [the claimant] a notice that explains why it did not accept the additional evidence and advise [the claimant] of [her] right to file a new application." 20 C.F.R. §§ 404.970(c), 416.1470(c)

Here, Dr. Hills's post-hearing opinion post-dated the ALJ's decision by over three months, and her conclusion regarding Plaintiff's attendance limitations failed to identify any relevant timeframe. Critically, the doctor failed to complete the section of the form that asked, "[a]s of what date have these limitations been in effect." Tr. 887. Although Dr. Hills statement referred to Plaintiff's headaches, without evidence that Dr. Hills intended the post-hearing opinion to relate to the period before the ALJ's decision, the Appeals Council was not required to consider it. Thus, the Commissioner did not err in rejecting the evidence and informing Plaintiff of her right to file a new application.

The Commissioner is affirmed as to this issue.

## II.    Substantial Gainful Activity Determination

The ALJ found that Plaintiff engaged in substantial gainful activity ("SGA") during the period of April 2016 through March 2017. Tr. 736–37. Plaintiff argues that the ALJ computed

the SGA determination inaccurately because the ALJ made the determination based on monthly averages from quarterly earnings, rather than actual monthly earnings. Pl.'s Br. 17.

A claimant's earnings from work activity show that she has engaged in SGA if the earnings average above the SGA threshold amount established for that year. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). The threshold amounts for 2016 and 2017 were $1,130 and $1,170 respectively. *See* Social Security Program Operations Manual System ("POMS") DI 10501.015. Under the POMS, a claimant's earnings should be averaged where the claimant:  (1) has continuous work; (2) does not have a significant change in work patterns; and (3) has earnings that fluctuate above and below the SGA threshold. POMS DI 10505.015(A). The average is calculated by adding the monthly earnings within the review period and dividing by the number of months in the review period. *Id.* at 10505.015(B)(1).

However, the "POMS guidance is not binding either on the ALJ or on a reviewing court." *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017); *see also Mark S. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00629-BR, 2020 WL 1917332, at *4 (D. Or. Apr. 20, 2020) ("The Ninth Circuit reached a similar conclusion regarding POMS finding it constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ.") (citation and quotation marks omitted). Accordingly, the Court declines to disturb the ALJ's step one determination.

## III.    Subjective Symptom Testimony

Plaintiff argues that the ALJ rejected her symptom testimony for reasons that were neither clear nor convincing. Pl.'s Br. 17–20. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can

reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The Commissioner asserts "the ALJ cited several clear and convincing reasons for rejecting Plaintiff's" subjective symptom testimony. Def.'s Br. 13. However, the Commissioner

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

only meaningfully argues that the ALJ permissibly rejected Plaintiff's testimony based on her activities of daily living. Accordingly, the Court limits its analysis to that argument.[4]

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways:  (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

### A.  Contradiction with Testimony

The ALJ cited Plaintiff's ability to shop for groceries, drive, prepare simple meals, complete housework, and care for farm animals seemingly implying those activities contradicted Plaintiff's testimony. Tr. 742. Viewed in context, however, Plaintiff's activities do not conflict with her allegations. For example, although Plaintiff reported in her 2015 function report that she retained the ability to prepare simple meals and do housework, by June 2017 she testified she was no longer able to cook or do dishes and her housework was limited to vacuuming once a month. *Compare* Tr. 929, *with* Tr. 1266–67; *see also* Tr. 1266 (explaining in 2015 function report that she attempted to "keep it simple" preparing meals such as soup). As for Plaintiff's ability to care for farm animals, an independent review of the record reveals that Plaintiff's

---

[4] *See United States v. Torres*, 911 F.3d 1253, 1257 n.3 (9th Cir. 2019) (noting that courts "review only issues which are argued specifically and distinctly in a party's" briefing) (citation omitted); *see also Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("we will not consider any claims that were not actually argued").

activities merely consisted of feeding and checking their water each morning and evening and cleaning their stalls "probably once a week," and "sometimes once every couple of weeks" depending on her energy levels. Tr. 929–31. Feeding her horses consisted of "go[ing] into a hay room, grab[bing] a few flakes of hay and then drop[ping] it in their stall." Tr. 930. Moreover, the record reflects that Plaintiff sold many of her animals because she "d[id not] have much energy anymore[.]" Tr. 929; *see also* Tr. 931 ("I've gotten rid of everything but my cats. I just don't have the energy.").

The Ninth Circuit has consistently instructed that such a modest level of activity is not sufficient to reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, the ALJ's discussion of Plaintiff's daily activities failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Dodrill*, 12 F.3d at 918. As this Court has observed an "ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *David H., v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00571-MK, 2020 WL 1970811, at *4 (D. Or. Apr. 24, 2020) (citation and bracketing omitted). In other words, other than generally summarizing Plaintiff's activities, the ALJ failed to explain how any of the listed activities undermined her subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject Plaintiff's testimony. *See id.*

**B. Transferability to Other Work**

As noted, an ALJ may discount subjective complaints where a claimant's daily activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639; *see also Fair*, 885 F.2d at 603 (explaining that where a claimant "spends a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain") (emphasis in original).

The Commissioner asserts the Ninth Circuit has affirmed the rejection of subjective "complaints in situations nearly identical to those presented here." Def.'s Br. 14–15 (citing *Burch*, 400 F.3d at 680–81; *Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999)). In *Burch*, the Ninth Circuit affirmed an ALJ's rejection of the claimant's testimony based on activities of daily living that included the ability to "care for her own personal needs, cook, clean, and shop" and the claimant's ability to "manage her own finances and those of her nephew." *Burch*, 400 F.3d at 680–81. Similarly, in *Morgan*, the Ninth Circuit held that a claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of [the claimant's] ability to work." *Morgan*, 169 F.3d at 600.

Those cases, however, are factually distinguishable from this case based on the more limited and sporadic nature of Plaintiff's activities discussed above. For example, by the time of her hearing, Plaintiff no longer retained the ability to cook and her housework consisted of vacuuming once a month. Tr. 929. Further, Plaintiff's ability to care for farm animals was limited to the relatively undemanding tasks of checking to ensure her animals had water, "grab[bing] a few flakes of hay and then drop[ping] it in their stall," and cleaning stalls *at most* once per week. Tr. 929–31. Significantly, the Ninth Circuit has explained, "many home activities

are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. On this record, Plaintiff's daily activities "do not meet the threshold for transferable work skills" and were therefore not a clear and convincing reason to reject her subjective complaints. *Orn*, 495 F.3d at 639; *Fair*, 885 F.2d at 603.

In sum, the ALJ failed to supply clear and convincing reasons supported by substantial evidence to reject Plaintiff's subjective symptom testimony. The ALJ is reversed as to this issue.

## IV.    Medical Evidence

Plaintiff contends that the ALJ improperly assessed the medical evidence of record. Pl.'s Br. 14–16. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927.[5] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a treating physician's opinion is contradicted by the opinion of another physician, however, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting out a

---

[5] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. §§ 404.1527, 416.927.

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

### A. Marc Stuckey, Psy.D.

Dr. Stuckey evaluated Plaintiff in November 2015 at the request of Disability Determination Services. Tr. 1943. Dr. Stuckey found Plaintiff cooperative, and his evaluation extended into a second appointment after "[Plaintiff] explained that she had to leave in order to go to the hospital for her migraines." Tr. 1944. In January 2016, Dr. Stuckey resumed the evaluation and diagnosed Plaintiff with major vascular neurocognitive disorder with behavioral disturbance; unspecified anxiety disorder; and borderline intellectual functioning. Tr. 1946. Dr. Stuckey administered formal testing and found that Plaintiff had average verbal comprehension; borderline IQ; low-average perceptual reasoning; deficient processing speed; and deficient working, auditory, visual, immediate, and delayed memory. Tr. 1945.

The ALJ gave no weight to Dr. Stuckey's opinion because it "did not provide opinions on the claimant's capacity for mental work activities."[6] Tr. 744. This was an appropriate reason to discount the opinion. An ALJ may discount a medical opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Kelsi R. v. Berryhill*, No. 6:17-cv-02046-MK, 2019 WL 2028531, at *6 (D. Or. May 8, 2019) (citing *Morgan*, 169 F.3d at 595 (concluding that the ALJ did not err in rejecting a medical opinion that identified limiting characteristics but did not explain *how* the characteristics

---

[6] The ALJ did consider the clinical findings from the examination in evaluating Plaintiff's residual functional capacity. Tr. 744. The ALJ also gave little weight to Dr. Stuckey's statement that Plaintiff is incapable of managing benefits because "this seems inconsistent with her level of functioning in activities of daily living, particularly her work as a cashier. *Id.*

precluded work activity)); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (concluding that the ALJ did not err in rejecting a medical opinion where it failed to explain the significance of the Plaintiff's diminished skills, while a different medical opinion made specific findings on the significance of the diminished skills). As such, the ALJ provided a legally sufficient reason to discount Dr. Stuckey's opinion.

### B.  Herbert Tanenhaus, M.D.

Dr. Tanenhaus appeared at Plaintiff's first administrative hearing held in June 2017, but was unable to form an opinion because he had not been provided with Plaintiff's more recent medical records. *See* Tr. 908–16. At a subsequent hearing held a few weeks later, Dr. Tanenhaus again appeared. Tr. 950–76. The doctor opined that the record before him established that Plaintiff had neurocognitive disease, depression, anxiety, and migraine headaches. Tr. 958. As relevant here, Dr. Tanenhaus opined that Plaintiff would be moderately limited in concentration, persistence, and pace. Tr. 964. Critically, the doctor based that opinion in part on how Plaintiff "responded to Dr. Hills' various examinations[.]" *Id.* The ALJ assigned great weight to the opinion. Tr. 743.

At the second hearing, however, Dr. Tanenhaus again did not have access to all of Plaintiff's medical records. *See* Tr. 950–52. Specifically, Dr. Tanenhaus did not have access exhibit "18F which [was] from Dr. Hills at Westside Neurology." Tr. 950. As noted, Dr. Hills served as Plaintiff's treating physician since at least 2004. *See* Tr. 2112. Exhibit 18F consists of three treatment notes from May through June 2017 in which Plaintiff reported an increase in the frequency of her "muscle headaches." Tr. 2119, 2121, 2123. Indeed, at one appointment, Dr. Hills added ten milligrams of Propranolol to Plaintiff's already potent cocktail of migraine headache medications. Tr. 2121–22.

After some confusion at the hearing, the ALJ initially found the records in 18F were "outside the time period that we're looking at[.]" Tr. 951. The records, however, are plainly within the period under review as the ALJ's decision found that Plaintiff had not been under a disability "from September 5, 2014, through the date of [her] decision," November 1, 2017. Tr. 746. It is also clear to the Court that Dr. Tanenhaus relied heavily on Dr. Hills' treatment notes in forming his opinion as to Plaintiff's functional limitations. Tr. 955 (discussing migraine headaches and referencing Dr. Hills' reports); Tr. 964 (explaining that Dr. Tanenhaus based his opined limitations as to concentration, persistence, and pace on how Plaintiff "responded to Dr. Hills' [] various examinations").

Further, it is evident to the Court that the ALJ relied almost exclusively on Dr. Tanenhaus' opined functional limitations in crafting portions of Plaintiff's RFC. *Compare* Tr. 739 (RFC limiting Plaintiff to "simple routine tasks . . . for a normal workday and workweek with normal breaks"), *with* Tr. 964 (Dr. Tanenhaus answering in the affirmative to ALJ's question as to whether Plaintiff "would be able to have sufficient concentration, persistence, and pace to complete simple work for a normal workday and worked with normal breaks").

Plaintiff essentially argues the ALJ erred in assigning great weight to Dr. Tanenhaus' opinion, which relied heavily on Dr. Hills' treatment notes, when Dr. Tanenhaus did not have access to all of Dr. Hills treatment records. Pl.'s Reply 3–4. The Commissioner asserts the argument was waived because Plaintiff's counsel failed to object at the hearing. Def.'s Br. 6 (citing *Meanel*, 172 F.3d at 1115).

The Court finds the Commissioner's argument unpersuasive. First, this case is distinguishable from *Meanel* in at least one critical respect:  the claimant in that case relied "on new statistics that she admittedly failed" to present to the Commissioner and presented for the

Page 16 – OPINION AND ORDER

first time to the district court. 172 F.3d at 1115. Here, Plaintiff is not presenting new evidence for the first time on appeal to this Court. Moreover, given the ambiguous nature of the ALJ's rulings as to Exhibit 18F, it is unclear whether Plaintiff's counsel could have objected as the ALJ appeared to change her initial ruling, deferring to rule on the exhibit until after the hearing. *Compare* Tr. 950 ("I'm going to rule [18F is] irrelevant."), *with* Tr. 951 ("But let me just look at [18F], . . . Oh, I can't look at exhibits. That's right, it doesn't open up."), *and id.* (explaining that after the hearing the ALJ would look at the Exhibit 18F and "determine whether [she] need[ed] to send it to [Dr. Tanenhaus] with an interrogatory[.]"). Notably, a review of the record does not reveal any interrogatories sent to Dr. Tanenhaus regarding Exhibit 18F. The Court finds Plaintiff did not waive the issue.

Second, as to the merits of Plaintiff's argument, although an ALJ "need not discuss *all* evidence presented to her," she is "required to explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (emphasis in original; citation and quotation marks omitted). Here, the Court finds Dr. Hills' 2017 treatment notes sufficiently probative that the ALJ was required to provide some reasoning for effectively rejecting them. *See id.*; *cf. Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel."); *Lester*, 81 F.3d at 830 ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."). As such, the Court finds that because Dr. Tanenhaus' did not have access to the complete medical records of Dr. Hills, which indicated Plaintiff's headaches were increasing in frequency, the

ALJ's assignment of great weight to Dr. Tanenhaus' opinion is not supported by substantial evidence.[7]

## V.    RFC Formulation

The RFC is the most a person can do in light of her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment must be "based on all of the relevant medical and other evidence," including the claimant's testimony as well as that of lay witnesses. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Put differently, the "RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms*." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (emphasis in original) (bracketing and quotation marks omitted) (citing SSR 96-8p, *available at* 1996 WL 374184).

Plaintiff asserts that the ALJ's RFC formulation failed to include limitations that were supported by substantial evidence in the record. Pl.'s Br. 16–17. The Court agrees.

The ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony and erred in weighing the medical opinion evidence. The limitations described therein were required to be included in Plaintiff's RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding [the claimant's] alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of [the claimant's] RFC."). As such, the ALJ's RFC

---

[7] Plaintiff also asserts the ALJ erred in failing to provide Dr. Tanenhaus with the vision therapy service evaluation report from Hannu Laukkanen O.D. *See* Pl.'s Br. 14–15; *see also* 2133–38 (Dr. Laukkanen's report). Because the Court finds the ALJ's evaluation of medical evidence requires remand, the Court need not reach this issue. On remand, however, the ALJ is required to present the Medical Expert with *all* of Plaintiff's medical records.

assessment failed to account for all of the relevant evidence in the record and the ALJ's

corresponding steps four and five determinations were not supported by substantial evidence.

The ALJ's RFC formulation must therefore be reversed and this case must be remanded.

**VI.    Remand**

The decision whether to remand for further proceedings or for the immediate payment of

benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176–78 (9th

Cir. 2000). The court first determines whether the ALJ committed legal error; and if so, the court

must review the record and decide whether it is "fully developed, is free from conflicts and

ambiguities, and all essential factual matters have been resolved." *Dominguez v. Colvin*, 808

F.3d 403, 407 (9th Cir. 2015) (internal citation omitted). Second, the court considers whether

further administrative proceedings would serve a "useful purpose." *Id*. at 407 (internal citation

omitted). Third, if the court finds the record is fully developed and further administrative

proceedings would not be useful, the court may credit the improperly discredited evidence as

true and determine whether the ALJ would find the claimant disabled in light of this evidence.

*Id.* (internal citation omitted). If so, the court may remand the case for an award of benefits,

although the court ultimately retains "discretion in determining the appropriate remedy." *Id*. at

407–08 (internal citation omitted).

Here, the Court concludes the ALJ committed legal error in failing to provide legally

sufficient reasons for rejecting Plaintiff's subjective symptom testimony and in evaluating the

medical evidence. The Court finds, however, that remanding for further proceedings would serve

a useful purpose. Although the ALJ provided legally insufficient reasons to reject Plaintiff's

subjective symptom testimony and failed to address specific medical evidence in the record, the

overarching errors with the ALJ's analysis stemmed from a lack of specificity with her

reasoning, not necessarily a lack of evidence in the record. *See Sandford M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-0571-AC, 2018 WL 6817048, at *7 (D. Or. Oct. 17, 2018) (remanding a step two of the credit-as-true analysis because "the ALJ's errors stemmed from a lack of specificity with her reasoning, not a lack of available contrasting evidence in the record"), *adopted*, 2018 WL 6816994 (D. Or. Dec. 26, 2018). The Court therefore finds the record would benefit from an opinion of a medical expert who has access to *all* of Plaintiff's medical records.

Accordingly, the Court remands this case on an open record to: (1) allow a medical expert to opine as to Plaintiff's functional limitations after reviewing all of the medical evidence of record; (2) conduct a *de novo* review of the medical evidence in light of the medical expert's opinion; (3) accept or provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony; and (4) conduct any further necessary proceedings.

## CONCLUSION

For these reasons, the Commissioner's decision denying Plaintiff's applications for DIB and SSI is REVERSED and this case is REMANDED for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

DATED this 30th day of April 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge